IN THE MATTER OF THE REVISION OF RATES FILED BY
LAMBERTVILLE WATER COMPANY INCREASING ITS
RATES FOR WATER SERVICE. LAMBERTVILLE
WATER COMPANY, RESPONDENT, v. NEW JERSEY
BOARD OF PUBLIC UTILITY COMMISSIONERS, APPEL-
LANT.

Argued November 27, 1978—Decided May 7, 1979.

*Mr. Bertram P. Goltz, Jr.,* Deputy Attorney General, argued the cause for appellant (*Mr. John J. Degnan,* Attorney General of New Jersey, attorney; *Mr. Stephen Skillman* and *Ms. Erminie L. Conley,* Assistant Attorneys General, of counsel).

*Mr. Alfred L. Nardelli,* Deputy Public Advocate, argued the cause for respondent Public Advocate ,(*Mr. Stanley C. Van Ness,* Public Advocate, attorney; *Mr. Nardelli, Mr. William Gural,* Director, Division of Rate Counsel and *Ms. Anne S. Babineau,* Assistant Deputy Public Advocate, of counsel and on the briefs).

*Mr. John S. Fields* argued the cause for respondent Lambertville Water Company (*Messrs. Davis & Reberkenny,* attorneys).

The opinion of the court was delivered by

SULLIVAN, J. This appeal involves a dispute as to the effective date of a rate increase granted, or to be granted, a public utility by the Board of Public Utility Commissioners following prolonged administrative and judicial review proceedings. The Appellate Division held that the rate increase must be made effective as of the date of the expiration of the two four-month periods of suspension which the Board is permitted to order under *N. J. S. A.* 48:2–21(d) or any further suspension agreed to by the utility pursuant to *N. J. S. A.* 48:2–21.3.

The Board of Public Utility Commissioners (Board) strongly urges that it has broad discretion, based on circumstances, to set an appropriate date on which its Decision and Order is to become effective, and that the public utility law does not establish a mandatory fixed effective date. Certification was granted by this Court, 76 *N. J.* 240 (1978), to consider this important question.

The issue is one of statutory construction. The operation of public utilities in this State is controlled by our public

utility law which has established a comprehensive framework of regulatory provisions. The Board of Public Utility Commissioners, the agency charged with enforcement of the law, is vested with broad powers over all aspects of public utility activity including the power to fix the rates which a utility may charge its customers. *N. J. S. A.* 48:2–21. With reference to a proposed increase in rates, the law in section 21(d) provides:

(d) When any public utility shall increase any existing individual rates, joint rates, tolls, charges or schedules thereof * * * the board, either upon written complaint or upon its own initiative, shall have power after hearing, upon notice by order in writing to determine whether the increase, * * * is just and reasonable. * * * The board, pending such hearing and determination, may order the suspension of the increase, change or alteration until the board shall have approved the same, not exceeding 4 months. If the hearing and determination shall not have been concluded within such 4 months the board may during such hearing and determination order a further suspension for an additional period not exceeding, 4 months. The board shall approve the increase * * * upon being satisfied that the same is just and reasonable.

A companion provision, *N. J. S. A.* 48:2–21.3, adds that:

Any public utility may file with the board a written stipulation subject to the board's approval at any time extending the suspension periods provided for in this chapter or waiving the effective date of any tariff or rate.

It is the construction of these statutory provisions, particularly section 21(d), which is the subject matter of this appeal.

On June 28, 1974, Lambertville Water Company (Lambertville) filed a petition with the Board seeking to increase its rates for water service effective August 1, 1974. The Board suspended the proposed increase for the two statutory four-month periods to April 1, 1975 while it held hearings on the petition. Unable to issue a decision and order by April 1, the Board obtained a written consent from Lambertville extending the suspension for an additional 30

days. On May 1, 1975, the Board issued its Decision and Order approving some increase in rates but not that which had been requested. The order directed Lambertville to file a tariff designed to produce the additional annual revenues authorized.

Lambertville did not immediately file the tariff authorized. Instead, it moved for reconsideration of the Decision and Order. The Board granted the motion and also authorized Lambertville to file a tariff, effective for service rendered on and after August 1, 1975, which would produce the additional revenues authorized in the May 1, 1975 Decision and Order. Such tariff was filed on July 30, 1975.

The subject matter of the hearing on reconsideration concerned primarily the allowable credit for federal income taxes claimed by the utility. Lambertville is part of a corporate conglomerate whose parent files a consolidated federal income tax return and thus enjoys certain tax advantages pursuant to 26 *U. S. C. A.* § 1501 *et seq.* However, the parent requires a tax contribution from Lambertville at the normal statutory rate of 48%. Lambertville argued that, since it was making a contribution for taxes to its parent corporation equal to 48% of income, it should be allowed a full deduction for the amount contributed.

The Board disagreed, and in its Decision and Order on reconsideration, dated March 25, 1976, allowed Lambertville a tax factor of only 38.9% of income. That order also provided that the tariff to generate the additional income would become effective on a date to be determined by the Board. A revised tariff was filed by Lambertville on April 9, 1976 and was approved by the Board effective May 1, 1976.

Lambertville appealed the ruling as to the allowable tax credit and also the decision as to the effective date of the rate increase.

The Appellate Division, in an opinion reported at 153 *N. J. Super.* 24 (1977), sustained the decision of the Board that Lambertville was not entitled to an allowable

tax factor of 48% merely because it paid that amount to its parent company as a result of inter-company agreement or policy when such payment did not truly represent the tax actually paid to the Internal Revenue Service. The Appellate Division agreed that whatever tax benefits the parent company received by virtue of its consolidated filing should be reflected in the rates which Lambertville was permitted to charge. *Id.* at 28–29.

However, the Appellate Division, while supporting the Board's refusal to be bound by the 48% figure, was unable to find any rational basis for the Board's use of a 38.9% computation. It therefore remanded the question of the amount of a tax credit to the Board for the formulation of a rate structure based on a reasonable tax deduction through precise findings and conclusions supportable in the record. *Id.* at 29–30.

The Appellate Division also considered the question as to the effective date of any rate increase ultimately granted Lambertville. It reviewed the statutory provisions heretofore quoted and concluded that the clear language of the law limiting the Board's power to order a suspension of rates to a maximum period of eight months, necessarily indicated a legislative intent that any rate increase granted thereafter would become effective as of the expiration of such period of suspension. *Id.* at 30–31.

The Appellate Division noted that Lambertville had consented to a 30–day extension of the statutory suspension period due to expire on April 1, 1975, thereby extending such suspension to May 1, 1975. Therefore, in remanding the matter to the Board for further consideration of the tax credit issue, it ruled that any rate increase granted to Lambertville "shall be effective as of May 1, 1975." *Id.* at 33.

The Appellate Division ruling on the tax credit issue has not been challenged by any party. However, the Board sought, and was granted, certification of the ruling as to the effective date of any rate increase granted. This latter

question is the only issue before us on the present appeal. For reasons hereinafter set forth we reverse the Appellate Division ruling as to this issue.

The rationale of the Appellate Division ruling was that the Legislature, in providing for a maximum suspension period of eight months, had fixed that period as a reasonable time for the Board's hearing and decision, so that any rate increase granted thereafter would have to be made operative as of the expiration of the suspension period. "Otherwise, the clear language [of the law] would have no significance." *Id.* at 32.

We read the law differently. The provisions for suspension relate only to the proposed rate increase sought by the utility. The Legislature, in fixing a maximum period of suspension of eight months, indicated that this was a reasonable period of time within which the Board, ordinarily, could decide whether a proposed increase was just and reasonable. Here the Board rendered its decision and order on the proposed increase within such maximum suspension periods (as extended for an additional period of 30 days by agreement with the utility). It held that the rates sought were in excess of those found to be reasonable and "denied" the proposed tariff. However, since the Board also found that the utility's present rates produced inadequate income, the utility was authorized to file, for the Board's consideration, a new tariff designed to produce specified additional revenues and thereby bring its rate of return up to that found to be reasonable.

The effective date of the substituted rate increase fashioned by the Board was not related to or controlled by the statutory provision for a maximum suspension period of eight months. As heretofore noted, that limitation applied only to the proposed rate increase sought by the utility.

In *Mechanic Falls Water Co. v. Public Utilities Commission,* 381 A. 2d 1080 (Me. 1977), the Supreme Judicial Court of Maine had before it a statute dealing with increases in public utility rates. The Maine statute required that proposed

increases had to be approved by its Public Utilities Commission which was authorized to suspend the proposed rates for a period not exceeding eight months pending its decision in the matter. See *id.* at 1085.

In the particular case, Washburn Water Co. had filed a proposed rate increase to become effective one month thereafter. The Public Utilities Commission suspended the proposed rate increase for eight months, held hearings thereon and, just prior to the expiration of the suspension period, disallowed the proposed rates and instead, authorized the filing of a substituted rate schedule. Washburn thereafter filed the substituted schedule and insisted that it be made effective as of the expiration date of the suspension period, arguing that the statute, in providing for a maximum suspension period of eight months, obviously intended that the effective date, for whatever rates were finally approved by the Commission, coincide with the expiration of the statutory suspension period. *Id.* at 1106.

The Supreme Judicial Court of Maine rejected this contention saying:

> Ultimately, Washburn appears to be alleging that because the maximum suspension period is eight months, the substituted rates must be in effect prior to the termination of that suspension period. The flaw in its argument is that the maximum suspension period concerns the length of time a *proposed rate schedule* can be suspended. It simply has no bearing on when a *substituted rate schedule* becomes effective.
>
> [*Id.* at 1108 (emphasis in original)]

██ Likewise, we conclude that the maximum eight-month period of suspension contained in *N. J. S. A.* 48:2–21(d) has no bearing on the effective date of a substituted rate increase fashioned by the Board when it rejects that sought by the utility.

██ The same reasoning applies to subsequent changes made in the substituted rate increase whether by way of rehearing ordered by the Board, *N. J. S. A.* 48:2–47, or remand directed by an appellate court. *N. J. S. A.* 48:2–46.

The Board in fashioning a substituted rate increase has broad discretion to fix an effective date in the light of circumstances. As long as a rational basis exists for the Board's action, its decision controls.

This is not a case where the Board, having suspended a proposed rate increase for the maximum period allowed by law, fails to act on the petition within the period of suspension. It has been suggested that, in such a case, the utility would have the right to put the proposed rate increase into effect, subject to such adjustments as may be required by the Board's ultimate decision. This issue is not presented in the case before us. *Cf. In re Revision of Rates by Redi-Flo Corporation,* 76 *N. J.* 21, 39 (1978).

Many rate proceedings have become quite complicated, requiring voluminous hearings which extend over substantial periods of time and result in the practical impossibility of concluding the matter within an eight-month period. In such case, the utility, during the pendency of the hearings, can petition the Board for interim relief pursuant to *N. J. S. A.* 48:2-21.1 and, on a sufficient showing of need, be allowed a temporary rate increase. It has been argued that this statutory provision for interim relief during the pendency of the hearing negates the concept that the utility has the right to put its proposed rates into effect as soon as the period of suspension expires. As noted, though, this issue is not presented on the present record, and we leave its resolution to a more appropriate case.

The Attorney General, representing the Board herein, argues that the regulatory authority over rate-making, vested in the Board, is so comprehensive and pervasive that it encompasses the fixing of an effective date for an increase in rates allowed by the Board even though the rate proceeding extends beyond the suspension period. In this connection he submits that making such higher rates retroactive to the end of the suspension period must not be deemed a legal mandate (with which we agree), but, rather, should constitute only one regulatory alternative which the Board would

have the power to utilize in the light of all of the circumstances.

We have previously noted that the Board, when it authorizes a substituted rate increase, has broad discretion, based on circumstances, to fix an effective date for such increase. Here the Board gave prospective effect only to the orders which it entered authorizing substituted rate increases for Lambertville. Since the issue of retroactivity is not presented in the record before us, we decline to address the question on a purely hypothetical basis. However, rate-making is essentially prospective in nature as has been held by this Court. *In re N. J. Power & Light Co.,* 15 *N. J.* 82, 92–93 (1954). See *In re Intrastate Industrial Sand Rates,* 66 *N. J.* 12, 23, 28 (1974).

The problems in trying to give retroactive effect to a rate increase are formidable. Customers are constantly being added and dropped by a utility. Those who have paid their utility bills have a right to expect that they will not be surcharged for the same service at a later date. New consumers should not be called on to pay a present surcharge for service rendered prior to their becoming customers.

In *In re N. J. Power & Light Co., supra,* the utility had sought a temporary surcharge to be added to a rate increase granted it in order to recoup past deficiencies in net income caused by the insufficiency of the former rates. This Court in an opinion by Chief Justice Vanderbilt rejected the utility's application holding that "the orderly processes of rate-making are necessarily present and prospective if rate-making is to be effective." 15 *N. J.* at 93. He added that

[t]he present practice \* \* \* is fair to the public utility, for it can act as speedily as it sees fit to move for a correction of inadequate rates, and it is fair to the consumer in safeguarding him from surprise surcharges dating back over years that he had a right to assume were finished business for him and possibly over years when he was not even a consumer.

[*Id.*]

That portion of the Appellate Division judgment which is the subject of this appeal is reversed. The Board, on the remand to it, has discretion to fix the effective date for whatever rate increase is finally allowed by it.

*For reversal*—Chief Justice HUGHES and Justices MOUNTAIN, SULLIVAN, PASHMAN, CLIFFORD and HANDLER—6.

*For affirmance*—None.